[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by Exxon Corporation from an assessment of damages by the defendant for the taking of a portion of its property in the Town of Farmington for the layout, alteration, extension widening, change of grade or improvement, etc., of the highway commonly known as U.S. Route 6. The plaintiff's property and the partial taking therefrom are shown on a map entitled; "TOWN OF FARMINGTON MAP SHOWING LAND ACQUIRED FROM EXXON CORPORATION BY THE STATE OF CONNECTICUT RECONSTRUCTION OF U.S. ROUTE 6 SCALE 1" = 40' FEBRUARY 1990 ROBERT W. GUBALA TRANSPORTATION CHIEF ENGINEER BUREAU OF HIGHWAYS." A copy of the map revised to April 26, 1991, was introduced into evidence as Exhibit 2. The property and the partial taking were also described in the complaint.
The parties stipulated that the date of taking was June 21, 1991, and that damages as assessed by the defendant in the amount of $98,000 were deposited by the CT Page 991 defendant with the clerk of the superior court and have been withdrawn by the plaintiff.
The Town of Farmington lies to the west of Hartford and is largely residential, although there has been business development particularly in recent years. It is served by Interstate Route I-84 and there are other major highways.
The subject property is a high volume gasoline service station in the south central part of Farmington. It is roughly triangular in shape and lies at the intersection of Route 6 (Colt Highway) and Scott Swamp Road, a heavily traveled area. Route 6 runs roughly east and west and Route 522 (Scott Swamp Road) is a short street connecting Route 6 and Route 10. Route 10 runs generally north and south through the center of Farmington. The land is zoned B-1 and utility service includes electricity, sewer and telephone service. It has a drilled well. The plaintiff has the special permit required in that zone for a gasoline service station. The subject property had 392.53 feet, more or less, frontage on Route 6 and 368 feet, more or less, frontage on Scott Swamp Road. It consisted of 1.35 acres, more or less, and was generally level and at or slightly above street grade. The subject property was improved with a three bay service station in good condition constructed of cement block and brick in 1971 and having about 1,798 square feet of floor area. It had amesite and concrete paving of about 28,000 square feet, three gasoline pump islands, landscaping, signs, lights and fencing. There were two access driveways on Route 6 and two access driveways on Scott Swamp Road. There are three 12,000 gallon fiberglass gasoline tanks which are new, having been installed in 1990. The impervious coverage ratio is in excess of the 40% permitted by the zoning regulations but it pre-existed the present requirements.
The purpose of the take was to widen and improve Route 6 and Scott Swamp Road at the place where they intersect. The take consisted of a portion of the subject property at its northwest corner of about 0.136 of an acre in area. The defendant also took an easement to slope along a portion of Route 6 within an area of 0.023 of an acre and a right to install a sedimentation CT Page 992 control system within a distance of 70 linear feet, more or less. It took rights to construct a driveway providing access from Route 6 and a driveway providing access from Scott Swamp Road and to install curbing, these rights to terminate upon completion of the work. The defendant took two of the access driveways and terminated the plaintiff's right of access at its northwest corner, leaving about 228 feet along Route 6 and about 232 feet along Swamp Scott Road over which right of access is retained. A flag pole, Exxon sign, concrete curbing, asphalt paving, landscaping and four pole mounted lights were within the area of the take.
After the take, the subject property consisted of an irregularly shaped piece of land of about 1.214 acres in area. Two of the access driveways have been taken and Route 6 will be elevated slightly above the subject property. Where there is only one driveway to a highway, the Department of Motor Vehicles requires that pumps be set back a distance of 60 feet from the property line nearest the highway. This requirement will mean that the present location of the pumps cannot be used unless another driveway is constructed.
The plaintiff called James W. Ford, a qualified engineer, as an expert witness. Ford testified that his firm had done a traffic circulation study of the site dealing with existing conditions before the take, and with an after take concept proposed by the defendant and an after take concept proposed by the plaintiff. The defendant's concept proposed only the one remaining access to each highway. The plaintiff's proposal would provide for relocation of the building and the pumps. It would also provide for an additional access way to Route 6 which would have to be constructed by the plaintiff and would require a curb cut permit. He concluded that one driveway to each highway would be adequate for access to the subject property but that circulation of vehicles on the station property would be impeded so that after the take the site as it remained would no longer operate reasonably as a gasoline station facility.
The plaintiff called Joseph Matthew Cunningham, its project engineer, who estimated that it would cost $750,000 to $1,000,000 to convert to a convenience store CT Page 993 and service station as proposed by the plaintiff. He said that several options for redesign of the site had been considered since 1987 and that there had been discussions about the station with Farmington zoning officials. He testified that redesign of old stations is done entirely on an economic basis and that a building would not be destroyed unless it was economically feasible to do so or unless safe access to the site required it. He thought that he became aware of the redesign of Route 6 in 1990 and testified that the station redesign project was placed on hold in January, 1991.
The plaintiff called Peter R. Marsele, a qualified real estate appraiser, as an expert witness. Marsele concluded that the highest and best use for the subject property after the take was continued use as a gasoline station. He used both the cost approach and the market comparison approach to evaluate the subject property as it existed before the take. He found two gasoline station leases which he found comparable and two sales which he considered comparable. After adjustments having used both methods, he concluded that the subject property had a fair market value before the take of $834,000. Marsele opined that because it would not be economically feasible to operate the gasoline station after the take without relocating the improvements except for the tanks and constructing a new driveway and a drainage system, necessitating a new site plan approval, the property after the take had value as land only. Using the same comparables, he concluded that the remaining land had a fair market value of $498,000. He estimated damages at $336,000. He did not place a value on the new tanks because they remain useable after the take.
The defendant called John Francis Shearer, a civil engineer as a witness. Shearer testified that the plaintiff had requested that he review certain preliminary site plans and that when he met with the Town Planner he discovered that there were plans for work on Route 6. He discussed the plans for the highway with engineers working for the defendant and gave them the plaintiff's preliminary plans. The defendant agreed to adjust the taking line to take less of the property. The defendant also agreed to change the location of the two CT Page 994 driveways. He requested a second driveway on Route 6 but this request was refused. However, the defendant modified a proposed guiderail so that the plaintiff could apply for a highway encroachment permit in the area requested and construct a driveway there. He was told by the plaintiff to stop work in January of 1991.
The defendant called William S. Nugent, a qualified real estate appraiser, as an expert witness. Nugent opined that before the take the gasoline station on the subject property was very well designed and had very good access. He opined that the layout was destroyed by the taking of two of the four driveways, making the station unuseable with the layout which existed. It was his opinion that the highest and best use of the subject property before the take was continued use as a high volume gasoline service station. He used both the cost approach and a direct sales comparison approach to value. He concluded that the fair market value of the subject property before the take was $558,000. He opined that after the take the pump and station layout were functionally obsolete, although the tanks are new and the area is sufficient for a new layout. He opined that the highest and best use for the subject site is commercial, such as convenience store and self service gasoline station. Accordingly, he evaluated the subject property after the take as a gasoline service station site with three gasoline storage tanks and some paving. Using the same methods as before, he concluded that the fair market value of the subject property after the take was $460,000. He estimated damages at $98,000.
The highest and best use for the subject property is its continued use as a gasoline service station. The two appraisers agreed that the taking of two of the four driveways make the layout of the gasoline station as it existed unuseable. The plaintiff had been considering a redesign of the station and construction of a convenience store and service station. New gasoline storage tanks had been put in the ground and they are useable with a different layout. The plaintiff may have concluded that a redesign was not economically feasible at present, but it stopped doing anything toward that end after it became known that the defendant intended to widen and alter Route 6. In any event, the building and pumps in their CT Page 995 location before the take became unuseable by reason of the take.
A referee considering an appeal from an award of damages for the acquisition of property by eminent domain must reach his own conclusion of value by weighing the opinions of the appraisers and the claims of the parties in the light of all the circumstances bearing upon value and of his own knowledge of the elements affecting value. After having seen the property, and having given due consideration to the testimony of all the witnesses and to all of the evidence, and relying upon my own knowledge of the elements which establish value, I have concluded that the damages sustained by the plaintiff were $176,950. Judgment may enter for the plaintiff to recover the further sum of $78,950 in addition to the sum of $98,000 which was deposited by the defendant with interest on said further sum of $78,950 from the date of taking to the date of payment, together with costs and an allowance of $1,800 towards its appraisal fee.
GEORGE D. STOUGHTON STATE TRIAL REFEREE